## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| UNITED STATES OF AMERICA | |
| v. | No. 21- cr-10197-DPW |
| OMARI PETERSON, | |
| Defendant | |

### GOVERNMENT'S SENTENCING MEMORANDUM

An 84-month sentence in this matter would communicate a clear message to the defendant, that society has laws that he simply must follow. The defendant, OMARI PETERSON, obviously did not get this message from his previous New Hampshire sentence imposed in 2018, nor did he get it from his history of repeated probation violations, in both New Hampshire and Massachusetts, and eventual re-incarcerations.  The defendant has shown that he is not merely a drug dealer. He is not merely an individual with eight different firearms at his disposal. He is not merely willingly disregarding the terms of his probation. He is not merely a gang member. Instead, the defendant is each and every one of these things.

For these reasons, along with the defendant's criminal history, the circumstances here justify the government's recommendation of 84 months of incarceration, followed by 3 years of supervised release.  This recommendation reflects the seriousness of the offense and is sufficient but no greater than necessary to accomplish the goals of sentencing.

### I.    THE ADVISORY SENTENCING GUIDELINES

On January 25, 2022, the defendant pled guilty to all the counts of the Indictment, which charged him with three offenses: distribution and possession with intent to distribute cocaine base and cocaine, in violation of 21 U.S.C. § 841(a)(1); and two counts of being a felon in possession of a firearm and ammunition, in violation of 18 U.S.C. § 922(g)(1). The defendant's

sentencing hearing is scheduled for November 14, 2022.   There is a plea agreement in this case. *See* Plea Agreement, Doc. No. 44.

The defendant is responsible for distributing, and possessing with intent to distribute, approximately 49.9 grams of cocaine base and 2.2 grams of powder cocaine. PSR ¶ 30. The guideline calculations are, however, controlled by the firearms the defendant possessed in this case. The two firearm counts form a single group, and the defendant's prohibited possession of these guns involved a semiautomatic firearm capable of accepting a large capacity magazine. Moreover, the defendant committed these offenses subsequent to a felony conviction for a controlled substance violation. Therefore, the base offense level is 22. PSR ¶ 31. The defendant is responsible for the possession of 8 firearms in total, seized on March 5th and March 6th of 2021, which increases the base offense level by 4. PSR ¶ 32. Further, because at least 4 of the firearms were stolen, the base offense level is further increased by 2. PSR ¶¶ 25, 33. The defendant is entitled to a three-level acceptance of responsibility reduction. PSR ¶¶ 40, 41.

The defendant has numerous prior criminal convictions, in both Massachusetts and New Hampshire, resulting in 5 criminal history points. PSR ¶ 62.  The defendant also committed the instant offense while under a criminal justice sentence, as referenced above, therefore two points are added. PSR ¶ 63.  As a result, the defendant is in criminal history category IV.  PSR ¶ 64.

The parties have jointly recommended that the base offense level is 28 as set forth in the plea agreement. Further, the government has agreed not to charge the defendant pursuant to 18 U.S.C. § 924(c), based on the conduct underlying the crimes.  See Plea Agreement at 1, 2.  The probation department has added a 4-level increase for the defendant's possession of firearms in connection with another felony offense and the defendant filed an objection. PSR at 46,

Objection #2 - #4. [1] As a result of this calculation, probation indicates that the defendant's base offense level is 32. Based upon this calculation, the advisory guideline range is 121-151 months.

## II.      SENTENCING FACTORS UNDER 18 U.S.C. § 3553(a)

The factors set forth in 18 U.S.C. § 3553(a) assist the Court in determining a sentence that is sufficient, but not great than necessary, to comply with the purposes of sentencing set forth in § 3553(a)(2). These factors include the nature and circumstances of the offense, the history and characteristics of the defendant, and the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, to provide just punishment for the offense, to afford adequate deterrence for criminal conduct, to protect the public from further crimes of the defendant, and to provide for the needs of the defendant. They also require courts to consider the kinds of sentences available, and the GSR.

Consideration of the § 3553(a) factors demonstrates that a sentence of 84 months, followed by 3 years of supervised release, is the appropriate sentence in this case.

### a.  <u>Nature of the Offense</u>

The nature and circumstances of the defendant's drug trafficking, and possession of dangerous firearms and ammunition, justify a significant sentence of 84 months.  In analyzing defendant's conduct and eventual arrest, the Court should first consider the brazen nature of the defendant's drug trafficking, while on probation in the state of New Hampshire for this same conduct. PSR ¶ 61. As indicated in the statement of offense conduct, the defendant made repeated controlled purchases to a cooperating witness ("CW"), including four crack cocaine sales in Boston, during February of 2021. PSR ¶¶ 7, 8. Each of these sales were captured on

---

[1] Using the defendant's calculation, the advisory guideline range would be 84-105 months. PSR at 46, Objection #9.

video. Each also demonstrate the seriousness of the defendant's offenses based on the speed with which they were accomplished, the defendant's readiness to sell more, and his desire to further his drug trafficking business. During one such controlled purchase, the CW-1 observed that the narcotics were pulled from a larger sandwich bag in the defendant's pocket, which was pull of pre-packaged "20's" and "30s" bags of crack cocaine, prepared for further street-level sales. At a subsequent controlled purchase, the defendant told the CW-1 that he could provide larger quantities of crack cocaine and that he frequents New Hampshire often and has access to cocaine, dope, ecstasy and crystal meth.

The government recognizes that this Court is certainly entitled to consider the calculus when addressing the powder-to-crack issues with cocaine being discussed by Congress, however it remains critical not to lose sight of the devastating effects cocaine use has on users and communities where dealers like the defendant are selling drugs for profit. Between 2012 and 2018, the number of deaths from drug poisoning involving cocaine increased every year, and 2018 was the third year in a row that such deaths exceeded 10,000.[2] The defendant's actions have been a contributing factor in the ongoing drug crisis in Massachusetts, consistently one of the states with the most cocaine-related deaths, year after year.[3] The fact that he continues to be

---

[2] DEA, 2020 NATIONAL DRUG THREAT ASSESSMENT at 30-31 (2020), https://www.dea.gov/sites/default/files/2021-02/DIR-008-21%202020%20National%20Drug%20Threat%20Assessment_WEB.pdf.

[3] *Id.* at 31. Massachusetts was one of four U.S. states— along with New Jersey, Ohio, and Pennsylvania—that were among the ten states with the most overall deaths from drug poisoning involving cocaine were also among the ten states with the highest age-adjusted death rates from drug poisoning involving cocaine, per 100,000 population. Those four states collectively accounted for 3,733 deaths, or approximately 25 percent of all deaths from drug poisoning involving cocaine in the United States in 2018. *Id.*

involved in drug dealing, while still on probation in the Hillsborough County Superior Court for distribution of heroin and crack cocaine, demonstrates that a significant sentence is necessary to promote respect for the law and to provide just punishment and deterrence in this case.

Additionally, the Court should consider that the defendant had access to no less than 8 firearms, including 2 at his residence and an additional 6 located in a storage unit, when he was arrested on March 5, 2021. That arrest came shortly after the defendant agreed to sell the CW approximately a half ounce of crack cocaine and had agreed to meet with the CW in Randolph, MA. PSR ¶ 18. The defendant's arrest, where investigators located 14 rounds of .380 ammunition, 18.1 grams of crack cocaine and 7.1 grams of powder cocaine, all on his person, was only the first of several significant discoveries by law enforcement in this case on March 5th and March 6th. PSR ¶¶ 19, 20.

Later that evening, during a federal search warrant at the defendant's residence, 3 firearms were found, including 2 in the defendant's bedroom. PSR ¶ 21. The following morning, an additional search warrant was executed on the defendant's storage unit, where investigators found 6 additional firearms, numerous rounds of ammunition, a speed loader, and approximately $9,770 in US Currency. PSR ¶ 23. Further investigation into these firearms revealed that 4 of them had been reported stolen on various dates in Manchester, NH and Goffstown, NH. PSR ¶ 25.

In this case, the defendant was not only engaged in drug trafficking, but also possessed dangerous and stolen firearms. The types of weapons that the defendant had access to, and was willing to possess, could have brought serious tragedy to himself, his family, and others in his community. Drug trafficking is a risky endeavor, and drug traffickers seek to protect themselves,

their drugs, and their proceeds with firearms. The defendant made himself available to an increased potential of violence associated with his behavior.

      **b.  <u>Characteristics of the Defendant</u>**

The government acknowledges the prompt acceptance of responsibility by this defendant. Peterson, however, has several aspects of his background that stand out. First, the defendant has previously engaged in drug dealing, numerous times, which is relevant to the facts here. He has now engaged in this same conduct again, while also illegally possessing firearms, for which he has also been convicted of in the past, and while still on conditions of probation for distribution of heroin and cocaine.

Second, this conduct is especially concerning for the defendant, a repeat offender for drug trafficking and firearm possession, and an individual who has been identified by law enforcement as a known associate of the St. Joseph's street gang in Boston. While the defendant has stated that he has been incorrectly labeled with this gang affiliation, the defendant's criminal conduct here and his criminal history stand squarely at the intersection of drugs, guns, and gangs.

The threat of guns in modern society is well documented and grows more serious every day.  Available research demonstrates that the involvement of guns makes quarrels, robberies, domestic disputes, and other conflicts deadlier. Those engaged in violent crime in the United States are not more intent on killing compared to their counterparts in other nations, they merely have better access to powerful tools that make death a more likely outcome of an assault or conflict. [4] The rate of murder or manslaughter by firearm is the highest in the developed world.

---

[4] David M. Hureau & Anthony A. Braga, *The Trade in Tools: The Market for Illicit Guns in High-Risk Networks*, CRIMINOLOGY, volume 56 issue 3, (July 18, 2018), *available at*: https://onlinelibrary.wiley.com/doi/full/10.1111/1745-9125.12187

There were approximately 14,400 deaths as a result of murder or manslaughter involving a firearm in 2019. That is approximately 73% of all homicides for that year. [5] Most gang-related murders and felonies involve illegal guns, according to federal crime data. [6] Illegal guns circulating among high-risk networks present a threat to the security and well-being of urban neighborhoods. The defendant's reoccurring involvement with firearms, as well as drug trafficking, has created a possible incendiary combination.

### c.  Specific and General Deterrence

A significant sentence of imprisonment is warranted to deter others from continuing further criminal conduct while on serious terms of probation, and from becoming involved in drug trafficking and illegally possessing firearms, especially if one is a repeat offender. General deterrence must be considered for any individuals similar to the defendant's status, that continuing to commit serious crimes while on terms of probationary release is simply unacceptable. While the defendant has served prison time before, those sentences obviously did not impress upon the defendant the necessity of conforming his conduct to the law. Additionally, the dangers of possessing so many firearms, while also engaging in drug dealing, are difficult to overstate. Individuals tempted to possess dangerous weapons, or distribute harmful controlled substances, must understand that any involvement will have immediate and harsh consequences. Imprisonment is necessary to send a strong warning to others who might consider similar conduct, to show that it is not worth the punishment.

---

[5] *America's gun culture in charts*, BBC NEWS, (August 9, 2019), *available at*: https://www.bbc.com/news/world-us-canada-41488081

[6] *Gun Violence in America*, NATIONAL INSTITUTE OF JUSTICE, (February 26, 2019), *available at*: https://nij.ojp.gov/topics/articles/gun-violence-america

Considerations of specific deterrence also supports the imposition of substantial incarceration. The defendant is no stranger to the danger and problems that his conduct brings. The sentence recommended by the government is hopefully sufficient to deter the defendant from returning to a life of drug dealing and dangerous firearms, and that any continued criminal behavior will be met with serious consequences.

## III.   THE GOVERNMENT'S RECOMMENDATION

For the foregoing reasons, those contained in the PSR, and those to be presented at the sentencing hearing, the government requests the following sentence:

- a term of 84 months' imprisonment;

- a fine within the Guidelines sentencing range, as calculated by the Court, unless the Court finds that the defendant is not able to pay a fine;

- a term of 36 months' supervised release with the conditions recommended by probation; and

- a special assessment of $300.

Respectfully submitted,

RACHAEL S. ROLLINS
United States Attorney

By:   */s/ John T. Dawley, Jr.*
John T. Dawley, Jr.
Assistant U.S. Attorney

Dated: November 9, 2022

<u>CERTIFICATE OF SERVICE</u>

I, the undersigned, hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).

*/s/ John T. Dawley, Jr.*
John T. Dawley, Jr.
Assistant U.S. Attorney

Dated: November 9, 2022